IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARIUS KIMBROUGH, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 17-3477 CCB |
| TYLER SENTZ, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Defendants, Officer Ryan Perry, Officer Jonathan Van Curan, and Detective Tyler
Sentz ("the Police Officer Defendants"), submit this memorandum of law in support of
their motion for summary judgment.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

On July 30, 2019, Plaintiff, Darius Kimbrough, filed a Second Amended
Complaint against, *inter alia*, the Police Officer Defendants. *See* ECF 29 ("SAC"). The
SAC contains three counts under 42 U.S.C. § 1983 for alleged violations of the Fourth
Amendment: Unlawful Arrest (Count I); Excessive Force (Count II); and Failure to
Intervene (Count III). The Police Officer Defendants are sued in their individual
capacities.

The lawsuit arises from events that occurred on August 6, 2014, when Plaintiff
was 14 years old. On that date, Officer Perry and Detective Sentz attempted to make a
traffic stop of a vehicle travelling east in the 1600 block of West Lexington Street. The

vehicle fled from the police, but later stopped. The driver ran, and Detective Sentz pursued him on foot.

Detective Sentz lost sight of the driver, but called out a description of him over his radio. Approximately four minutes later, Officer Van Curan observed a male matching that description running west on West Lexington Street. Officer Van Curan followed that male, later identified as Plaintiff, into 1511 W. Lexington Street and detained him. Plaintiff was held in custody until Detective Sentz arrived at 1511 W. Lexington Street and identified Plaintiff as the vehicle's driver. Plaintiff was then arrested. On October 9, 2014, the charges were dismissed.

Plaintiff alleges that he was neither the driver of, nor a passenger in, the car stopped by Officer Perry and Detective Sentz. For this reason, Plaintiff contends that his arrest was unlawful. Further, Plaintiff alleges that excessive force was used during the course of his arrest. Finally, he claims that each of the Police Officer Defendants observed the others using excessive force against Plaintiff, yet failed to intervene.

The Police Officer Defendants are entitled to summary judgment as a matter of law. Plaintiff's unlawful arrest claims fail as to each of the Police Officer Defendants. Officer Perry did not participate in arresting Plaintiff. Officer Perry, therefore, cannot be liable for unlawful arrest. *Swagler v. Sheridan*, No. CIV.A. RDB-08-2289, 2011 WL 2635937, at *5 (D. Md. July 5, 2011). To the extent Detective Sentz participated in Plaintiff's arrest, that arrest was supported by probable cause. Even assuming *arguendo* that Plaintiff was not the driver of the vehicle, Detective Sentz is entitled to qualified immunity as to Plaintiff's unlawful arrest claim because his conclusion regarding

2

probable cause for Plaintiff's arrest was objectively reasonable. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.") (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Officer Van Curan is also entitled to qualified immunity as to Count I. Based upon his experience as a Baltimore Police officer, Officer Van Curan believed Plaintiff to be the driver of a stolen vehicle based upon his location, his actions, the fact that his appearance matched the description given by Detective Sentz, and the fact that he was coming from the same area in which, based upon his radio transmission, Detective Sentz had last seen the vehicle's driver. Officer Van Curan therefore had probable cause. Even if Plaintiff was not the driver and Officer Van Curan made a mistake -- he did not -- he is entitled to qualified immunity because that mistake was a reasonable one.

The Police Officer Defendants are entitled to summary judgment on Plaintiff's excessive force claim, Count II. Detective Sentz and Officer Perry are entitled to summary judgment because there is no evidence that they used any force against Plaintiff. Although Officer Van Curan did make physical contact with Plaintiff within 1511 W. Lexington Street, he did not use excessive force and is, therefore, entitled to summary judgment. Plaintiff has not produced any evidence demonstrating that Officer Van Curan used any force against Plaintiff outside of 1511 W. Lexington Street. Officer Van Curan is, therefore, entitled to summary judgment as to any allegation of excessive force outside of 1511 W. Lexington Street.

Finally, the Police Officer Defendants are entitled to summary judgment on Plaintiff's bystander liability claim, Count III, because Plaintiff has not produced evidence supporting any of the three elements of such a claim. More specifically, Plaintiff has not demonstrated that the Police Officer Defendants: "(1) knew that fellow officers were violating [Plaintiff's] constitutional rights ... (2) had reasonable opportunity to prevent such violations; and (3) chose not to act." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 417 (4th Cir. 2014).

## II.  STATEMENT OF FACTS

### A.  Detective Sentz and Officer Perry attempt to make a traffic stop.[1]

On the night of August 6, 2014, Officer Perry and Detective Sentz were in an unmarked Baltimore Police Department ("BPD") vehicle patrolling the area of the 1600 block of West Lexington Street in Baltimore. Both officers were in uniform with their badges displayed. Officer Perry was driving the vehicle. Detective Sentz was in the front passenger seat.

While travelling east on West Lexington Street, Detective Sentz and Officer Perry observed a black Dodge Charger ("the Dodge") travelling at a high rate of speed in the same direction as their vehicle. Further, Officer Perry and Detective Sentz observed the Dodge cross the center line on West Lexington Street. The Dodge then sped past the police vehicle. The police vehicle activated its emergency lights and attempted to stop

---

[1]    The facts in this section are verified by the affidavits of Officer Perry, attached as Ex. 1, and Detective Sentz, attached as Ex. 2.

the Dodge. Officer Perry called out the police vehicle's location over the radio and indicated that they were pursuing a fleeing vehicle.

The Dodge continued speeding on West Lexington Street, and turned left onto the 200 block of N. Stricker Street. The police vehicle followed. The Dodge turned left onto the 1500 block of W. Saratoga Street and then turned left onto the 200 block of N. Gilmor Street.

The Dodge stopped at the 1500 block of Penrose Avenue and four Black males fled. Detective Sentz observed a thin Black male wearing a tank top and dark colored shorts exit the Dodge's driver's seat and run east in the 1500 block of Penrose Avenue. Two other males, one wearing a blue shirt and dark colored pants, the other wearing a red shirt and dark colored pants, also exited the Dodge and ran east in the 1500 block of Penrose Avenue. Another male, later identified as David Smith, exited the Dodge and surrendered. Officer Perry remained with Smith.

Detective Sentz followed the driver of the Dodge on foot. As he pursued him, Detective Sentz called out the driver's description over his radio. Detective Sentz ultimately lost sight of the driver. Detective Sentz called for additional units to search for the driver and provided a description of the driver: a thin build Black male wearing a white tank top and dark colored shorts. Other BPD units, including BPD helicopters, arrived to search for the driver.

**B.  Officer Van Curan sees Plaintiff; Plaintiff is arrested.**

Within a few minutes, Officer Van Curan, who was on foot patrol in the 200 block of N. Stricker Street, observed a Black male, later identified as Plaintiff, matching the description provided by Detective Sentz, running westbound in the 1500 block of West Lexington Street. *See* Affidavit of Officer Van Curan, attached as Ex. 3, ¶ 7. The Black male made eye contact with Officer Van Curan and continued running. *Id.* ¶ 8. Officer Van Curan observed Plaintiff enter 1511 W. Lexington Street. Based upon Detective Sentz's description of the driver of the Dodge, Plaintiff's location in the vicinity of where Detective Sentz lost sight of him, the fact that Plaintiff was running, and the fact that he continued to do so after Officer Van Curan made eye contact with him and gave him commands, Officer Van Curan believed that the male he followed was the driver of the Dodge. *Id.* ¶¶ 6-9. Believing that Plaintiff had been operating a stolen vehicle, Officer Van Curan followed Plaintiff into 1511 W. Lexington Street and attempted to detain him. *Id.* ¶ 9. As Plaintiff tried to run up the stairs in the house, Officer Van Curan used his hands to pull Plaintiff off of the steps. *Id.* ¶¶ 10-11. Plaintiff was taken out of the home. *Id.* By that time, several other officers had arrived on scene. *Id.* Plaintiff was then taken into custody. *Id.* ¶ 12. Officer Van Curan did not handcuff Plaintiff. *Id.* ¶ 13.

Plaintiff contends that he was neither the driver of, nor a passenger in, the Dodge. He testified that he was on West Lexington Street a few doors east of his home (toward Stricker Street) with his friend. *See* Plaintiff's Deposition, attached as Ex. 4, p. 59:11-60:5. Plaintiff saw a black car "going fast like they were trying to get away." *Id.* p. 60:14-17. Plaintiff saw the Dodge turn left on Stricker Street. *Id.* p. 60:16-18. "Once

[the Dodge] made the left, the police came a couple seconds later." Ex. 4, p. 61: 8-9. The police came from the same direction that the Dodge had been travelling. *Id.* p. 61: 10-13. Plaintiff then walked back to his house. *Id.* p. 64:1-2, 9-11. Plaintiff did not see any police officers before he got into his house. *See id.* p. 64:14-19. Plaintiff did not "know if anybody said anything to [him] before [he] got inside." *Id.* p. 68:11-15.

After entering his house, Plaintiff tripped going up the stairs. *Id.* p. 70:9-18. When he turned around, he saw "about five" uniformed police officers coming in the house and telling him to get on the ground. *Id.* p. 70:2-71:14. Plaintiff, however, could not otherwise describe any of these officers. *Id.* p. 71:9-10. Plaintiff was holding onto the bannister, and "[m]aybe one or two" officers were pulling his feet. *Id.* p. 76:14-18. Plaintiff described these officers as Caucasian, but could not provide any other specific detail. *Id.* p. 74-76. He later clarified his testimony and said there were five officers in the home, but only one officer who pulled his feet. *Id.* p. 77:7-9. Plaintiff admitted that he was resisting the officers when he was on the steps. *Id.* p. 91:10-12. Plaintiff eventually let go and came to the bottom of the steps. *Id.* p. 78:9-13. Plaintiff was standing at that time. *Id.* p. 78:9-15. Plaintiff was taken out of the house. *Id.* p. 84:12-13.

Plaintiff's grandmother, Barbara Davis, and brother, Demetri Kimbrough were home along with his sister's husband, Shalik Fulton, when Plaintiff came in. Barbara Davis testified that, as Plaintiff was going up the steps, a heavy set officer with blond hair pulled him down the steps and outside. *See* Deposition of Barbara Davis, attached as Ex. 5, p. 44:10-19. It appeared that the officer had his hands on Plaintiff's waist area and

shoulder area as he was trying to pull him off the steps. Ex. 5, p. 47:18-48:2. Plaintiff was trying to get up the steps. *Id.* p. 50:9-11. Plaintiff was taken out of the house and taken to the ground. *Id.* p. 55:6-56:21. Davis and Plaintiff's brother, Demitri, were in the hallway watching the officer and yelling. *Id.* p. 46:18-47:3. The officers that handcuffed Plaintiff were not of the same officers who took him out of the house. *Id.* p. 57:1-5. Davis didn't know their names. *Id.* p. 57:8-12.

Fulton was on the second floor in the kitchen cooking, when he heard a car come flying down the street. *See* Deposition Transcript of Shalik Fulton, attached as Ex. 6, p. 32:15-19. He then saw an unmarked police car. *Id.* p. 32:19-21. The vehicles were travelling on Lexington Street towards Stricker Street. *Id.* p. 34:4-5. The police vehicle had its emergency lights activated. *Id.* p. 35:12-20. Fulton looked out the second floor window and saw Plaintiff headed towards Stricker Street, *see id.* p. 36:17-20, on his bicycle, *id.*, p. 40:3-11. Fulton "later found out that [Plaintiff] ran back to the house[.]" *Id.* p. 40:20-21. Within two minutes, *id.*, p. 91:4-12, he heard Plaintiff and came to the top of the stairs, *id.* p. 42:2-6. At that point, Fulton saw Plaintiff trying to "pull himself up the stairs, he is holding onto the rail, trying to pull himself up the stairs, and it's probably five or six officers ... dragging him down the stairs." *Id.* p. 37:4-8. Fulton described those officers as Caucasian and Black, but he could not provide any additional detail. *Id.* p. 42:11-17. He clarified that two to five officers were trying to remove Plaintiff from the stairs. *Id.* p. 50:16-51:2. Again, he could not describe any of them. *Id.* The officers were using their hands to get Plaintiff off of the stairs. *Id.* p. 53-58. Plaintiff was taken outside. *Id.* p. 58:10-13.

Once outside, Plaintiff testified that an officer ordered him to get on the ground. Plaintiff complied. *See* Ex. 4, p. 85:7-16. Plaintiff recalled there being 20 or 25 police outside his house. *Id.* p. 93:20-94:1. Plaintiff was also handcuffed once he was on the ground. *Id.* p. 88:10-12. One officer held Plaintiff's legs by his ankles, *id.* p. 86:20-87:1, and another had his hand by Plaintiff's neck, *id.*, p. 87:14-15. Both officers were restraining Plaintiff with their hands. *Id.* p. 87: 16-20. Plaintiff stayed on the ground until he was transported from the scene. *Id.* p. 88:13-16. Plaintiff does not recall how long he was on the ground. *Id.* p. 137:10-138:3. Plaintiff could not describe either of the officers that held him on the ground other than to say they were Caucasian and in uniform. *Id.* p. 89:12-90:1. Plaintiff did not know whether the officer who pulled Plaintiff's feet when he was on the stairs was one of the officers that detained him outside. *Id.* p. 90:7-16.

According to Fulton, once Plaintiff was outside, multiple officers were on him. Ex. 6, p. 62:14-21. Fulton was not sure if these were the same officers who had removed him from the house. *Id.* p. 64:14-19. He testified that he did not "remember the officer that took him out of the house[.]" *Id.* p. 65:18-21. Fulton recalled that Plaintiff was trying to get up and there were more than four officers trying to restrain him on the ground. *Id.* p. 66:2-67:5. Fulton did not know how Plaintiff got to the ground. *Id.* p. 67:19-68:1.

Plaintiff was not physically taken to the ground. Ex. 4, p. 85:10-13. Plaintiff does not claim that he was tackled, punched, or kicked. *Id.* p. 92:2-12, 114:12-14. He confirmed that no officer slammed him to the ground. *Id.* p. 131:13-17. No officer

smashed his face into the ground. Ex. 4, p. 18-20. No officer jabbed their knees into Plaintiff's back. *Id.* p. 135:22-136:2.

Detective Sentz arrived on scene and identified Plaintiff as the operator of the Dodge. Ex. 2, ¶ 13. Plaintiff was arrested and transported to Juvenile Bookings. Plaintiff was released hours later.

Although Plaintiff did not ask for medical attention on the scene, Ex. 4, p. 109:15-17, he claimed that he was complaining on the scene of injuries to his rib area and his right wrist, *id.* p. 109:18-110:5. He claimed that his wrist hurt because the handcuffs were tight. *Id.* p. 113:1-6. He claimed his rib hurt from being pinned on the ground. *Id.* p. 113:11-16. Plaintiff did not complain of any other injuries at the scene, including cuts, bumps, scrapes, or bruises. *Id.* p. 114:18-115:1.

Following his release from Juvenile Bookings, Plaintiff went to Johns Hopkins Hospital. Plaintiff's medical records indicate that Plaintiff complained of pain to his left wrist, not his right wrist. *See* medical record, attached as Ex. 7. Plaintiff had a prior injury to his left wrist in 2014. Ex. 4, p. 110-111. His left arm was placed in a cast as a result of that earlier injury. *Id.* p. 112. Plaintiff thought he was diagnosed with a wrist sprain, and recalled his arm being placed in a splint. *Id.* p. 121:10-15. Plaintiff recalled undergoing a course of therapy for his injuries. *Id.* p. 127:17-129:4. His injuries healed. *Id.* p. 123-24. Plaintiff is not claiming any other injuries, physical or mental as the result of the incident. *Id.* p. 126:7-10.

The records from the Department of Juvenile Services indicate that the charges against Plaintiff were dismissed on October 9, 2014.

10

## III.   LEGAL STANDARD

"A motion for summary judgment is granted under Rule 56 of the Federal Rules of
Civil Procedure if there is no genuine issue as to any material fact, and the moving party
is entitled to judgment as a matter of law." *Philadelphia Produce Credit Bureau v. New
World Wholesale, Inc.*, No. SAG-15-498, 2015 WL 7008372, at *2 (D. Md. Nov. 10,
2015) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990)). As this Court has
said:

> If the moving party makes its motion properly, the burden
> shifts to the non-moving party, whose "response must . . . set
> out specific facts showing a genuine issue for trial." Fed. R.
> Civ. P. 56(e)(2). Unlike the moving party, the "opposing party
> may not rely merely on allegations or denials in its own
> pleadings; rather, its response must – by affidavits or as
> otherwise provided in this rule – set out specific facts showing
> a genuine issue for trial." *Id.* The opposing party must provide
> additional materials to successfully defend against summary
> judgment and those materials must include assurances to the
> Court that they are authentic and reliable.

*Doughty v. Washington Metro. Area Transit Auth.*, No. CBD-14-2902, 2015 WL
9302946, at *2 (D. Md. Dec. 21, 2015).

"'The party opposing a properly supported motion for summary judgment may not
rest upon the mere allegations or denials of its pleadings, but rather must set forth specific
facts showing that there is a genuine issue for trial.'" *Bennett v. Green*, No. JKB-15-3026,
2016 WL 2866859, at *1 (D. Md. May 16, 2016) (quotations omitted) (quoting *Bouchat
v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003)). Although
the evidence is viewed in the light most favorable to the non-moving party, "[t]he court
must . . . also abide by the 'affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial.'" *Id.* (quoting *Bouchat*, 346 F.3d at 526).

Critically, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Rule 56 thus mandates the entry of "summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322 (internal quotation omitted). Further, "a moving party who does not bear the burden of proof may be granted summary judgment 'if there is an absence of evidence to support the non-moving party's case.'" *Wright Sols., Inc. v. Wright*, No. CBD-12-178, 2013 WL 1702548, at *8 (D. Md. Apr. 18, 2013) (quoting *Celotex*, 477 U.S. at 325).

## IV.  ARGUMENT

### A.  The Police Officer Defendants are entitled to summary judgment on Count I.

In Count I, Plaintiff alleges that he was detained (or caused to be detained), handcuffed and arrested without a warrant or a lawful basis. He further alleges that the Police Officer Defendants made false statements necessary to a probable cause finding. *See* SAC ¶¶ 50, 52, 54. Plaintiff, however, does not identify the alleged false statements. *See* SAC ¶ 54.

### 1. Officer Perry is entitled to summary judgment on Count 1.

Officer Perry is entitled to summary judgment on Count I because there is no evidence that he directly participated in Plaintiff's arrest. "In a § 1983 personal or individual capacity suit, a plaintiff must show that the official charged personally caused the deprivation of his [legal] rights." *Roberts v. Prince George's County, Maryland*, 157 F. Supp. 2d 607, 609 (D. Md. 2001) (citing cases). Officer Perry and Detective Sentz attempted to stop the Dodge for traffic violations. *See* Ex. 1, ¶ 5; Ex. 2, ¶ 7 . All of its occupants exited the vehicle. Ex. 2, ¶ 9. Officer Perry stayed with the one passenger who did not flee. Ex. 1, ¶ 7. Officer Perry was not involved in arresting Plaintiff. *Id.* ¶ 8. Because Officer Perry was not involved in Plaintiff's detention or arrest, he cannot be liable for unlawful arrest. *Swagler*, No. RDB-08-2289, 2011 WL 26535937, is illustrative.

In *Swagler*, the Court granted summary judgment in favor of three Bel Air police officers who were sued for First and Fourth Amendment claims as a result of their alleged participation in the plaintiffs' arrest. *Id.* The Court confirmed that "[a]n arrest requires either physical force ... or, where that is absent, submission to the assertion of authority." *Id.* at *5 (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). In reaching its holding, the Court noted that where the plaintiffs submitted peacefully to their arrest, failed to identify any of the defendants as their arresting officer, and the officers arrived *after* plaintiffs were arrested, summary judgment was warranted. *Id.* The Court held that the defendants "were neither direct nor 'integral' participants in the arrest of the Plaintiffs." *Id.*

Here, as in *Swagler*, Officer Perry not involved in detaining or arresting Plaintiff. Officer Perry is, therefore, entitled to summary judgment.

### 2. Detective Sentz is entitled to summary judgment on Count I.

To the extent Detective Sentz participated in Plaintiff's arrest, the arrest was supported by probable cause. In the alternative, even if Plaintiff was not the driver of the Dodge, Detective Sentz is entitled to qualified immunity.

Probable cause is a defense to an unlawful arrest claim. An officer has probable cause where "the officer had reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense." *United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014) (internal quotation marks and citations omitted). An officer has probable cause to stop the driver of a car "'[w]hen [that] officer observes a traffic offense—however minor[.]'" *Id.* at 312 (quoting *United States v. Hassan El*, 5 F.3d 726, 730 (4th 1993)). "Probable cause is a flexible standard that simply requires 'a reasonable ground for belief of guilt' and 'more than bare suspicion.'" *Whetstone v. Mayor & City Council of Baltimore City*, No. ELH-18-738, 2019 WL 1200555, at *23 (D. Md. Mar. 13, 2019) (quoting United *States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2011)).

Officer Perry and Detective Sentz both witnessed the driver of the Dodge commit traffic violations. *See* Ex. 1, ¶¶ 4-6; Ex. 2, ¶¶6-8. Detective Perry and Officer Sentz observed the Dodge cross a double yellow line, *see* Ex. 1, ¶ 4; Ex. 2, ¶ 6, a violation of

Md. Code Transp. § 21-307 (c).[2] After Officer Perry activated the BPD vehicle's

emergency lights, Detective Sentz observed the Dodge's driver failing to stop and fleeing

on foot once the Dodge did stop. *See* Ex. 1, ¶¶ 5-7; Ex. 2, ¶ 9. Those actions violate Md.

Code Transp. § 21-904 (b)(1)-(b)(2).[3] Finally, given the manner in which the Dodge was

driven and the fact that its occupants fled, Detective Sentz believed the driver may have

stolen the vehicle in violation of Md. Code Crim. § 7-105. *See* Ex. 2, ¶ 10. *See also* Ex.

1, ¶ 7.

Section 26-202(a) of the Transportation Article of the Maryland Code authorizes a

police officer to arrest a person without a warrant for certain violations of the Maryland

Vehicle Law. As relevant here, § 26-202 provides that:

> (a) A police officer may arrest without a warrant a person for a
> violation of the Maryland Vehicle Law … including any rule
> or regulation adopted under it, or for a violation of any traffic
> law or ordinance of any local authority of this State, if: … (3)
> The officer has probable cause to believe that the person has
> committed the violation, and the violation is any of the
> following offenses … (vii) Fleeing or attempting to elude a
> police officer[.]

Section 2-202 of the Criminal Procedure Article of the Maryland Code authorizes

warrantless arrests for felonies such as vehicle theft.

---

[2]    Section 21-307(c) provides in pertinent part that "where signs or marking defining a no
passing zone are placed as provided in subsection (a) of this section, a driver may not drive on
the left side of any pavement stripping designed to mark the no-passing zone throughout its
length."

[3]    Section 21-904(b)(1)-(b)(2) provides that "[i]f a police officer gives a visual or audible
signal to stop and the police officer is in uniform, prominently displaying the police officer's
badge or other insignia of office, a driver of a vehicle may not attempt to elude the police officer
by: (1) Willfully failing to stop the driver's vehicle; or (2) fleeing on foot." "[V]isual or audible
signal includes a signal by hand, voice, emergency light or siren." Md. Code Transp. § 21-
904(a).

Officer Perry and Detective Sentz had probable cause to arrest the driver of the Dodge. At a minimum, Officer Perry and Detective Sentz had probable cause to arrest the Dodge's driver for fleeing and eluding. Both Officer Perry and Detective Sentz were in full uniform with their badges prominently displayed. Ex. 1, ¶ 3; Ex. 2,¶ 4. After observing the Dodge's driver committing traffic violations, Officer Perry activated the BPD vehicle's emergency lights to make a traffic stop. Ex. 1, ¶ 5; Ex. 2, ¶ 7. The Dodge continued driving. Ex. 1, ¶ 6; Ex. 2,¶ 8. When it did stop, its driver fled and Detective Sentz pursued. Ex. 2, ¶ 9. Detective Sentz called out on the radio a description of the driver. Ex. 2, ¶ 10. Based on all of these circumstances, and his training Detective Sentz believed the vehicle was stolen. Ex. 2, ¶ 10. After Plaintiff was detained, Detective Sentz positively identified him as the Dodge's driver. Ex. 2, ¶ 13. Plaintiff arrest was, therefore, supported by probable cause.

Even if Detective Sentz's identification of Plaintiff was a mistake, summary judgment is still appropriate because Detective Sentz is entitled to qualified immunity. Qualified immunity amounts to "'an entitlement not to stand trial or face the other burdens of litigation.'" *Brown v. Gilmore*, 278 F.3d. 362, 366-37 (4th Cir. 2002) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity will protect an officer "'from civil damages in a § 1983 action insofar as [the officer's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). In making a qualified immunity determination, a district court must first decide "whether a constitutional right

would have been violated on the facts alleged." *Brown*, 278 F.3d. at 367 (quotation marks and citation omitted). Assuming that a plaintiff establishes the violation of a right, a court must next decide "whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Id.* Courts have discretion as to which of these two prongs should be addressed first in a particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"The Supreme Court has recognized that [qualified] immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Further, "as we have spelled out with specificity, qualified immunity protects law officers from 'bad guesses in gray areas,' and it ensures that they may be held personally liable only for 'transgressing bright lines.'" *Id.* (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

Here, Detective Sentz observed the Dodge's driver fleeing. He called out that description over his radio. Minutes later, Plaintiff -- who matched that description -- was detained based upon that description. Detective Sentz went to the scene, and positively identified Plaintiff as the Dodge's driver. Plaintiff was, therefore, arrested. Detective Sentz is entitled to qualified immunity because there is no evidence that his belief was unreasonable. Stated differently, at most, Detective Sentz made a mistake in identifying Plaintiff. Plaintiff has not produced any evidence showing that Detective Sentz transgressed any "bright lines." *Gomez*, 296 F.3d at 261 (quoting *Marciariello*, 973 F.2d

at 298).  Plaintiff has not demonstrated a violation of a clearly established right. Detective Sentz is, therefore, entitled to summary judgment.

### 3.      Officer Van Curan is entitled to summary judgment on Count I.

Officer Van Curan saw Plaintiff near the area where Detective Sentz last saw the fleeing driver and within minutes of Detective Sentz calling out the Dodge driver's last known location.  Based upon the nature of the call and his training, Officer Van Curan believed the Dodge was stolen.  Plaintiff fit Detective's description of the fleeing driver. Officer Van Curan observed Plaintiff running. Plaintiff made eye contact with him and continued running.  Those facts caused Officer Van Curan to pursue Plaintiff.  Based on these facts, Officer Van Curan had probable cause.

Even if Officer Van Curan was mistaken, and Plaintiff was not the driver, he is entitled to qualified immunity because his conclusion was objectively reasonable. *Schultz v. Braga*, 290 F. Supp. 2d 637, 648-49 (D. Md. 2003) ("an officer who mistakenly concludes that probable cause exists is entitled to immunity if his conclusion is objectively reasonable in light of the circumstances and information available to him at the time of the incident.") (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Likewise, Officer Van Curan did not transgress any bright line. *Gomez*, 296 F.3d at 261 (quoting *Marciariello*, 973 F.2d at 298).  Plaintiff, therefore, cannot establish that Officer Van Curan violated any clearly established right in detaining Plaintiff.

**B.    The Police Officer Defendants are entitled to summary judgment on Count II.**

Officer Perry and Detective Sentz are entitled to summary judgment on Count II because there is no evidence that they used any force, much less unreasonable force, against Plaintiff. Plaintiff alleges that the Police Officer Defendants used excessive force in effectuating his arrest. To prevail on an excessive force claim, Plaintiff must allege and prove that the officers' actions were objectively unreasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Courts decide claims of excessive force by looking to "the 'reasonableness' *of a particular use of force*" as "judged from the perspective of a reasonable officer on the scene." *Id.* at 396. Here, there is no evidence in the record that either Detective Sentz or Officer Perry participated in using *any* force against Plaintiff. Officer Perry was not at 1511 W. Lexington Street when Plaintiff was taken into custody or arrested. Ex. 1, ¶¶ 8-9. Detective Sentz was not at the scene when Plaintiff was taken into custody, which is when he claims excessive force was used. Ex. 2, ¶¶ 12-13. For these reasons, Detective Sentz and Officer Perry are entitled to summary judgment.

Officer Van Curan is also entitled to summary judgment. In order to prevail on a claim for excessive force, Plaintiff must allege and prove that Officer Van Curan's actions were objectively unreasonable "in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham*, 490 U.S. at 397. Under this standard, an officer has authority to use some degree of physical force or

threat thereof to make an arrest or an investigatory stop. *Id.* at 396. "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," is unreasonable under the Fourth Amendment. *Id.* at 396; *see also Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988) ("Faithful adherence to this established fourth amendment standard of objective reasonableness when dealing with claims of the use of excessive force during arrest will not make police officers subject to § 1983 liability at one end for 'every push and shove' they make nor at the other end for every serious injury they inflict during an arrest."). Unquestionably, "the right to make an arrest carries with it the right to use a degree of physical coercion or threat thereof to effect the arrest." *Brown*, 278 F.3d at 369.

In evaluating excessive force claims, the court should examine several factors to determine whether the officer's actions were reasonable under all of the facts and circumstances. *See Jones v. Ashford*, CV TDC-14-3639, 2017 WL 221783, at *6 (D. Md. Jan. 18, 2017), *aff'd*, 691 Fed. Appx. 113 (4th Cir. 2017). Under *Graham*, courts examine "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Here, the most relevant factor for purposes of this motion is Plaintiff's resisting arrest.

As explained above in Section I.A., Officer Van Curan had probable cause to arrest Plaintiff. Thus, he had the right to use reasonable force in effectuating that arrest. *Brown*, 278 F.3d at 369. Plaintiff admits that while he was on the stairs he was physically resisting, trying not to go with the officers. Ex. 4, p. 91:10-12. Officer Van

Curan used his hands to remove Plaintiff. Ex. 3, ¶ 11. There is no evidence that Officer Van Curan used any other force, and there is no allegation that Plaintiff sustained any injury as the result of Officer Van Curan's actions.

A police officer may use reasonable force to physically extract a non-compliant arrestee. *See Rogala v. District of Columbia*, 161 F.3d 44, 48 (D.C. Cir. 1998). There, an officer told the plaintiff that she was under arrest after she refused direct orders to remain in a car during the field-sobriety test of the car's driver. *Id.* When the plaintiff refused to exit the car, the officer reached in and pulled her out by her arm. *Id.* at 54. The plaintiff claimed that the officer bruised her arm and caused her to strike her head on the interior of the car and suffer a black eye. *Id.* at 48. The Court affirmed the trial court's holding that there was no excessive force because the officer had probable cause to arrest the plaintiff and the level of force he used to remove her from the car was reasonable. *Id.* at 53-55.

Just as in *Rogala*, Officer Van Curan used minimal force to detain Plaintiff, and Plaintiff did not sustain any injury as the result. For these reasons, Officer Van Curan is entitled to summary judgment.

Officer Van Curan is also entitled to summary judgment on any claim by Plaintiff that Officer Van Curan used any force against Plaintiff outside Plaintiff's home. Plaintiff claims that after he left his home, he was ordered to the ground, handcuffed, and then restrained for a period of time by two officers. Ex. 4, p. 85-88. His grandmother claims that he was physically slammed to the ground and detained by two officers. Ex. 5, p. 55-56. Plaintiff's brother in law testified that Plaintiff was on the ground and that there were

four officers restraining him. Ex. 6, p. 65:12-17. Neither Plaintiff nor any of his fact witnesses testified that Officer Van Curan interacted with Plaintiff outside of the home, or that he participated in any interaction involving any other officer and Plaintiff. At best, Plaintiff's grandmother and brother in law testified that they did not know whether the officers restraining Plaintiff included the officer who took Plaintiff off of the steps. Plaintiff testified that he did not know if it was the same person. Ex. 4, p. 90:7-16. All witnesses admitted there were numerous police officers on the scene. But Plaintiff contends that excessive force was used only by one or two officers. *See id.*, p. 86-88.

In order to maintain this personal capacity suit against Officer Van Curan for violation of the Fourth Amendment, Plaintiff must produce evidence that Officer Van Curan "personally caused the deprivation of [Plaintiff's] federal rights." *Roberts*, 157 F. Supp. 2d at 609 (citing cases) (granting summary judgment "[a]fter a full opportunity for discovery" where Plaintiff could not identify the police officer who allegedly "knocked him down."). Plaintiff has failed to offer any evidence that Officer Van Curan did anything to Plaintiff outside Plaintiff's house or that he was present. Officer Van Curan is, therefore, entitled to summary judgment.

## C. The Police Officer Defendants are entitled to summary judgment on Count III.

In Count III, Plaintiff alleges a bystander liability claim against the Police Officer Defendants based upon failure to intervene. *See* SAC ¶¶ 78-80. To succeed on such a claim, Plaintiff must demonstrate that the Police Officer Defendants: "(1) knew that fellow officers were violating [Plaintiff's] constitutional rights ... (2) had reasonable

opportunity to prevent such violations; and (3) chose not to act." *Stevenson*, 743 F.3d at 419. As the Fourth Circuit emphasized:

> Although some of our sister Circuits have employed slightly different formulations of the knowledge prong, this requirement has substantively been the same: namely, that a bystanding officer must know of his fellow officer's misconduct. The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer. If the bystander lacks such *specific knowledge*, he cannot be a participant in the unlawful acts, and the imposition of personal liability is impermissible.

*Swagler*, 2011 WL 263937, * 7 (quoting *Randall v. Prince George's County, Maryland*, 302 F.3d 188, 204 n. 24 (4th Cir. 2002)) (emphasis added in *Swagler*). "[B]ystander liability is only appropriate in 'certain limited circumstances.'" *Id.* at *7 (quoting *Randall*, 302 F.3d at 204).

The Police Officer Defendants are entitled to summary judgment because Plaintiff has not offered evidence substantiating any of these elements. There is no evidence that any of the Police Officer Defendants knew that any other officers were violating Plaintiff's constitutional rights. None of the officers witnessed anyone violating Plaintiff's rights and, as explained in Sections IV. A-B, none of the Police Officer Defendants violated Plaintiff's rights. Similarly, to the extent any officer may have violated Plaintiff's rights, there is no evidence that any of the Police Officer Defendants had reasonable opportunity to prevent the violations or that they chose not to act. For these reasons, the Police Officer Defendants are entitled to summary judgment.

## V.    CONCLUSION

For all of these reasons, the Police Officer Defendants request that this Court grant

their motion for summary judgment.

Dated: September 21, 2020           Respectfully submitted,

                                    /s/                                
Christopher C. Jeffries (Fed. Bar. No. 28587)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax: (410) 539-1269
cjeffries@kg-law.com

*Counsel for Officer Ryan Perry, Officer*
*Jonathan Van Curan and Detective Tyler Sentz*