# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DARIUS KIMBROUGH,

    *Plaintiff,*                        Case No. 17-3477-CCB

v.

TYLER SENTZ, *et al.*,

    *Defendants.*

## PLAINTIFF'S MOTION IN OPPOSITION TO SUMMARY JUDGMENT

NOW COMES Plaintiff, Darius Kimbrough, by and through counsel, Solomon M. Radner and Excolo Law PLLC, and file this response in opposition to Defendants' Motion for Summary Judgment. For the reasons stated herein, Plaintiff respectfully requests this honorable court deny Defendant's motion.

Dated: October 5, 2020                     Respectfully Submitted,

                                                     Excolo Law, PLLC

                                                     */s/ Solomon M. Radner*
                                                     Solomon M. Radner (20195)
                                                     Attorney for Plaintiff
                                                     26700 Lahser Rd., Suite 401
                                                     Southfield, MI  48033
                                                     (248) 291-9712
                                                     sradner@excololaw.com

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................... ii

TABLE OF AUTHORITIES ................................. **Error! Bookmark not defined.**

STATEMENT OF FACTS ................................................................................... 1

LEGAL STANDARD ......................................................................................... 3

ARGUMENT ..................................................................................................... 5

  I. Defendants are Not Entitled to Qualified Immunity Because A Reasonable Jury Could Find They Violated Plaintiff's Clearly Established Constitutional Rights. ............................................................. 5

    A. A Reasonable Jury Could Find Defendants Unlawfully Arrested Plaintiff Because, Given the Totality of the Circumstances, They Did Not Have Probable Cause to Effectuate an Arrest. ................................................................................. 6

    B. A Reasonable Jury Could Find The Defendants Applied Excessive Force When They Dragged Plaintiff from his Home, Slammed Him to the Ground, and Knelt on His Back and Neck for an Extended Period of Time. ....................................... 10

    C. A Reasonable Jury Could Find Defendant Officers Failed to Intervene as They Were Aware that Plaintiff's Rights were being Violated, had Reasonable Opportunity to Act, and Chose not to Act. ............................................................... 13

    D. Plaintiff Constitutional Rights Were Clearly Established Barring a Grant of Qualified Immunity ............................................. 14

CONCLUSION ................................................................................................ 17

## STATEMENT OF FACTS

On August 14, 2014, Plaintiff was outside of his home riding a bicycle with a friend. (Ex. 1, Darius Kimbrough Dep., at p. 19:19-20:2, 43:13-14). Unbeknownst to Plaintiff, Defendant Officer Perry and Defendant Officer Sentz had stopped a rental vehicle a short distance from Plaintiff's home. (Ex. 2, Ryan Perry Dep., at p. 10:10-13, 33:19-34:8; Ex. 3, Tyler Sentz Dep., at p. 36:12-14). The vehicle had crossed over the center line, leading Defendant officers to suspect a traffic violation. (*Id.*). Upon stopping the vehicle, the driver and two passengers fled the scene. The fourth vehicle occupant, David Smith, exited the vehicle with his hands up and remained on the scene. (Ex. 2 at p. 31:11-32:8, 40:12-18). Defendant Perry remained with Smith for some time. (*Id.* at 18:20-19:3). At this point, when some of the occupants and the driver of the vehicle fled the scene, Defendant Officer Perry suspected that the vehicle may have been stolen. (Ex. 2 at p. 41:19-42:2).

Officer Sentz observed a thin black male in a white tank top and dark shorts exit the driver's seat and flee the scene. (*Id.* at p. 36:10-20, 38:8-11, 49:4-10). Defendant Perry, on the other hand, could not identify the driver despite witnessing the same events as Sentz from substantively the same vantage point. (*Id* at p. 51:8-13). Curiously, Defendant Officers Perry and Sentz cannot agree on who wrote the police report after the incident. Both appear to insist that they wrote the report. (Ex, 2 at p. 32:15-21; Ex. 3 at p. 104:3-9).

1

Despite Defendant Officers Perry and Sentz belief that the vehicle may have been stolen, it was not reported stolen. (Ex. 2 at p. 612-3). Furthermore, neither officer attempted to contact the rental company that owned the vehicle, or the person to whom the vehicle was rented to. (Ex. 3 at p. 57:11-20, 68:5-7, 101:4-17; Ex. 2 at p. 54:5-12, 24:3-9). Ultimately, Defendant Perry released Smith without questioning him about the incident; notably, Perry believes it would have been inappropriate to question Smith even if the vehicle *had* been stolen. (Ex. 2 at p. 62:2-6). Further, Defendants made no effort to discover whether the vehicle was in fact stolen. (Ex. 3 at p. 63:16-21, 71:12-16; Ex. 2 at p. 61:2-3). Defendant Perry has been an officer for more than 10 years and is charged with training officers. (*Id.* at p. 5:5-18, 66:7-11).

While Defendant Sentz was in pursuit of the driver of the vehicle, he lost sight of him. (Ex. 3 at p. 41:15-17). Defendant Officer Van Curan and Officer Bossi were on foot patrol when they saw Plaintiff playing outside of his home. (*Id.* at p. 48:19-49:9; Ex. 1 48:12-17). On this day, Plaintiff had been wearing a white tank top and dark shorts. He was about 5' 7" and 130 pounds. (Ex. 1 at p. 51:17-52:20). Believing Plaintiff matched the description provided over the radio by Sentz, Officer Van Curan pursued Plaintiff, chasing him into his home and dragging him down his stairs. (Ex. 3 at p. 48:19-49:9, 51:5-15, Ex. 4, Johnathan Van Curan dep., at p. 11:5-6). Shalik Fulton identified officer Perry as one of the officers whom was dragging Plaintiff down the stairs. (Ex. 5 Shalik Fulton Dep., at p. 41:11-42:1, 45:1-48:2).

2

Defendant Sentz purports that he positively identified Plaintiff as the driver of the vehicle. Admittedly, he did so despite only seeing the driver for a matter of seconds and without ever questioning Smith. (Ex. 3. at p. 71:12-16, 72:2-13).

Though Plaintiff initially resisted being abruptly seized and dragged down the steps of his home, this resistance lasted less than a minute. (Ex.1 at p. 79:20-21). Plaintiff was taken outside, slammed to the ground, and arrested. (*Id.* at p. 80:3-9, 83:19-22, Ex. 6 Barbara Davis Dep., at p. 57:13-18). Despite the fact that Plaintiff was compliant at this point, the arresting officers aggressively pinned Plaintiff to the ground. Two were on his back and one knelt on Plaintiff's neck. (Ex. 1 at p. 84:19-85:6, Ex. 6 at p. 52:15-18). As a result of the force applied to the compliant Plaintiff, he experienced pain in his ribs and to his wrist. (Ex. 1at p. 109:18-20, 113:13-16). Plaintiff complained of the injuries at the scene. (*Id.*). Further, after being released from police custody, Plaintiff was taken to the hospital where he was diagnosed with a sprained wrist and bruised ribs. (*Id.* at p. 120:20-124:5). Plaintiff was required to go to court on his birthday. (*Id.* at p. 124:21-125:3). All charges against Plaintiff were subsequently dropped when the officers failed to show up in court. (*Id.* at p. 124:16-125:21).

## **LEGAL STANDARD**

A motion for summary judgment (MSJ) will only be granted if the evidence demonstrates that there is no genuine issue of material fact and that the movant is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*; 106 S. Ct. 2505; 91 L.Ed.2d 202 (1986). A "genuine" dispute of material fact exists where the conflicting evidence creates "fair doubt"; however, speculative assertions alone fail to meet this threshold. *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md.1999). Rather, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Anderson* at 251-252.

Furthermore, in order to demonstrate that no issue of material fact exists, the movant is the movant is required cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(a), (c)(1)(A); see *Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir.2013). If the movant successfully demonstrates that there is no issue of material fact, then "the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts." *Celotex v. Catrett*, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). That is, "the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, "facts in support of or in opposition to a motion

4

for summary judgment need not be in admissible form; the requirement is that the party identify facts that could be put in admissible form." *Mallik v. Sebelius*, 964 F. Supp. 2d 531, 546 (D. Md.2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC–11–3415, 2013 WL 2919705, at *1 n. 1 (D. Md. June 12, 2013)).

Finally, when deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, and it must draw all inferences in favor of the nonmovant. *United States v. Diebold, Inc.*, S. Ct. 993, 994; 8 L.Ed.2d. 176 (1962).

## ARGUMENT

I. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE A REASONABLE JURY COULD FIND THEY VIOLATED PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). That is, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*.

Further, a right is clearly established where, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right." *Anderson v. Creighton*, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). That is, to be considered "clearly established" existing precedent would need to place the "statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350, 190 L. Ed. 2d 311 (2014) (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)).

### A. **A Reasonable Jury Could Find Defendants Unlawfully Arrested Plaintiff Because, Given the Totality of the Circumstances, They Did Not Have Probable Cause to Effectuate an Arrest.**

The gravamen of all definitions of probable cause for an arrest is the existence of reasonable grounds for belief that a crime has been committed and that the person being arrested committed the crime. *Brinegar v. United States*, supra, 69 S. Ct. 1302, 93 L. Ed. 1879; *Carroll v. United States*, 45 S. Ct. 280, 69 L. Ed. 543 (1925). Moreover, "[p]robable cause for a warrantless arrest is defined as 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Coleman*, 100 F. Appx. 202, 204 (4th Cir. 2004) (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)). Whether probable cause for an arrest exists is determined by a "totality-of-the circumstances" approach. *Illinois v. Gates*, 462

6

U.S. 213, 230, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983). Ultimately, the Court's "inquiry is whether [the officers'] action [were] that of reasonable and prudent police officers in view of the circumstances as they appeared at the time of arrest." *Ralph v. Pepersack*, 335 F.2d 128, 132 (4th Cir. 1964)

Turning to *Smith v. Munday*, the Court held that the investigating officer did not have probable cause to arrest the Plaintiff. *Smith v. Munday*, 848 F.3d 248, 252 (4th Cir. 2017). There, the investigating officer had received a tip from a confidential informant (CI). The CI informed the officer that "'April Smith,' a skinny, black woman, sold him crack cocaine. He did not know if she had been convicted for selling crack cocaine before or if she lived in the county." *Id.* at p. 253. The investigating officer then conducted a "broad search in the department's database of individuals with criminal histories, looking for a woman of the same name," "[a]nd when he found multiple individuals, at least two of whom were black women named April Smith weighing between 130 and 140 pounds, he chose one for no immediately apparent reason." *Id*.

The court reasoned that because the defendant officer made no attempt to determine whether the Plaintiff was in fact the person whom the CI had informed them of, he failed to demonstrate that there was probable case for the arrest. *Id.* The court further reasoned that, although "[a]n investigating officer need not "exhaust every potential avenue of investigation," they must "conduct some sort of

7

investigation and assemble individualized facts that link the suspect to the crime." *Id*. at p. 254. There the officers failed to do so. *Id*. (citing *Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000)).

Turning to the present case, it is apparent that the Defendant officers failed to establish probable cause prior to arresting Plaintiff. In fact, the circumstances in the present case are quite similar to those present in *Munday*—thus, clearly establishing that merely matching a description does not give rise to probable cause. Like the Plaintiff in *Munday*, Plaintiff in the present case does appear to match the description that Officer Sentz purportedly radioed to other officers. However, as in *Munday,* matching a description alone is insufficient to create probable cause for an arrest; there must be "assemble individualized facts that link the suspect to the crime." In the present case, as in *Munday*, the officers failed to conduct any semblance of an investigation, and any investigation they did do only discredited the assumption that the vehicle was stolen or that Plaintiff had been the driver.

First, the officers failed to establish that a crime had even been committed. That is, they never learned whether the vehicle was stolen. In fact, they never questioned Smith about whether the vehicle was stolen or who was in the vehicle despite detaining him and recording some of his information. (Ex. 2 at p. 62:2-6). Furthermore, the officer did not contact the renal company or the renter of the vehicle to determine whether the vehicle had been stolen. (Ex. 3 at p. 57:11-20, 68:5-7,

101:4-17; Ex. 2 at p. 54:5-12, 24:3-9). Finally, the officers were informed that the vehicle had *not* been reported stolen. (Ex. 2 at p. 612-3). As such, there was no evidence that the vehicle was in fact stolen or that a crime had been committed.

Further, assuming *arguendo* that a crime had been committed, Defendant officers failed to demonstrate the existence of individualized facts that would link Plaintiff to the crime. Rather, when considering the totality of the circumstances, any information he officers obtained weigh in favor of the conclusion Plaintiff was not the suspected driver of the vehicle. Several witnesses attempted to explain to the officers that Plaintiff had simply been playing in his yard and could not possibly have been driving a stolen vehicle. (Ex. 1 at p. 19:19-20:2, 43:13-14; Ex. 5 at p. 32:14-21, 36:17-20, Ex. 6, Barbara Davis Dep., at p. 58:15-59:8).

Defendant Van Curan purports individually that even if probable cause did not exist for the arrest he should be shielded from liability because even if he was mistaken about whether probable cause existed, this mistake was objectively reasonable. Plaintiff disagrees. Per Defendant Van Curen's own testimony, when he began pursing Plaintiff on foot, he did not know whether Plaintiff was the suspect— he only knew Plaintiff matched the description. (Ex. 4 at p. 69:7-12). As such, Defendant Van Curan would need more individualized facts linking Plaintiff to a crime before he could lawfully effectuate an arrest. Yet, Defendant Van Curan's own testimony indicates he was never informed that Plaintiff had stolen a vehicle or

9

otherwise committed a crime. (Ex. 5 at p. 11:10-15). As such, Defendant Van Curan fails to demonstrate what individualized facts he obtained from his fellow officers would render his actions "objectively reasonable." That is, the totality of the circumstances indicate that Defendant Van Curan did not possess any information—whether accurate or not—that would render his actions objectively reasonable.

Finally, Defendant Perry attempts to argue that he did not participate in the arrest of Plaintiff. However, the record supports the conclusion that this is a question of fact for the jury because a witness not only placed Perry on the scene at the time of the arrest, the witness recalls seeing Perry physically engaged in arresting Plaintiff. (Ex. 5 at p. 41:11-42:1, 45:1-48:2).

For the above-mentioned reasons, it would be inappropriate to grant summary judgment as there remains a question of fact as to whether the arrest was lawful and whether Perry was on the scene at the time of the arrest.

**B. <u>A Reasonable Jury Could Find The Defendants Applied Excessive Force When They Dragged Plaintiff from his Home, Slammed Him to the Ground, and Knelt on His Back and Neck for an Extended Period of Time.</u>**

"The Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances." *Graham v. Connor*, 490 U.S. 386, 399, 109 S. Ct. 1865, 1873, 104 L. Ed. 2d 443 (1989). In determining whether the use of force was "objectively reasonable" under the fourth amendment, the court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). Such an inquiry requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865, 188 L. Ed. 2d 895 (2014). As such, "the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

First, Plaintiff maintains that any force applied to effectuate his arrest was unlawful as there was no lawful basis for his arrest and thus no lawful basis to use any force on Plaintiff. As Plaintiff tripped and entered his home he was immediately grabbed by Defendant Officers and pulled down the stairs. (Ex. 1, p. 74-75).

Nevertheless, assuming *arguendo* that there was a lawful basis, the force applied in effectuating Plaintiff's arrest was still excessive. Turning to *Rowland v. Perry*, the Court held that Defendant Officers applied excessive force when they attempted to gain control over a suspect. *Rowland v. Perry*, 41 F.3d 167, 171 (4th Cir. 1994) There, Defendant Officers had attempted to arrest Plaintiff for keeping a five dollar bill he knew had been lost. During the course of arrest, Plaintiff resisted and Defendant Officer attempted to quell him by throwing his weight against

11

Plaintiff's leg. *Id.* at p. 172. In doing so, the officer injured Plaintiff's knee, causing it to crack. Although Plaintiff was resisting, the Court reasoned that the use of force was excessive because the crime was minor and there was no evidence that the Plaintiff posed a risk of harm to the officers. *Id.* at p. 174. *See also Smith v. Ray*, 781 F.3d 95, 103 (4th Cir. 2015) ("Nor could a reasonable officer believe that [plaintiff's] initial act of pulling her arm away when [officer] grabbed her without warning or explanation justified Ray's decision to throw her down, jam his leg into her back, and wrench her arm behind her."). A police officer "cannot use [a] slight resistance to the attack to justify his escalation of the conflict." *Smith,* 781 F.3d at 103.

Application of the *Graham* factors in conjunction with *Rowland* and *Smith* make it apparent that the force applied was excessive, and Plaintiff's right to be free from such force was clearly established. First, Plaintiff, a minor at the time, at most was suspected of stealing a vehicle—he was not suspected of violent crime. Second, as was the case in *Rowland* there is no evidence to suggest that Plaintiff posed an immediate threat to the officers. At no point did any officer testify they believed their safety was threatened by Plaintiff. Finally, Plaintiff resisted arrest for less than a minute out of fear. He then complied with Defendant Officer's orders. (Ex.1 at p. 79:20-21). Yet, it was not until Plaintiff was compliant that Defendant Officers aggressively slammed Plaintiff into the ground, kneeling on his back and neck for an extended period of time. (Ex. 1 at p. 84:19-85:6, Ex. 6 at p. 52:15-18). Thus, it

12

was excessive force to slam Plaintiff to the ground and kneel on his back and neck once he was already compliant and handcuffed.[1]

As such, Defendants have failed to establish that their use of force was not excessive, and their motion should be denied.

### C. **A Reasonable Jury Could Find Defendant Officers Failed to Intervene as They Were Aware that Plaintiff's Rights were being Violated, had Reasonable Opportunity to Act, and Chose not to Act.**

"The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall v. Prince George's Cty., Md*., 302 F.3d 188, 203 (4th Cir. 2002). Thus, if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly. *Id.*

Defendants definitively state that because there was no constitutional violation, there can be no bystander liability. However, as demonstrated above, Plaintiff has established the existence of several fact questions that should result in the denial of Defendants' Summary Judgement motion.

---

[1] For the reasons outlined in IA, there remains a question of fact as to whether Perry and Sentz participated in the arrest. Thus, the Court must reject Defendants assertion that they did not participate in the use of excessive force. Though Plaintiff himself cannot identify the officers who arrested him, other witnesses did.

Further, the facts indicate that Defendant Officer Sentz and Perry were on the scene at the time of the arrest. (Ex. 5 p. 41:11-42:1, 45:1-48:2; Ex. 3. at p. 71:12-16, 72:2-13). As such, both officers had, at the very least, the opportunity and means to stop Plaintiff from being arrested without probable cause. Furthermore, Van Curan's testimony implies that no one told him that the vehicle was stolen or that a crime had been committed. (Ex. 4 at p. 69:7-12). As such, he too had a duty and the opportunity to intervene in the unlawful arrest of Plaintiff.

Moreover, there is a question of fact as to when the officers arrived on scene—permitting the fact finder to draw the inference that the Officers—if they were not involved in the arrest—could have intervened in the use of force.

Finally, Defendants argue that even if a constitutional violation had occurred, there is no evidence they had the opportunity to intervene. This ignores a great deal of the testimony given by the witnesses. In fact, it appears as though Plaintiff was on the ground for about 15 to 30 minutes before he was then moved to a police vehicle and taken to booking. (Ex. 1 at p. 88:2-7, Ex. 7 at p. 79:11-17). As such, there is a question of fact as to whether the Defendants had the opportunity to intervene.

As such, Defendants fail to establish that there is no question of material fact with respect to Plaintiff's bystander liability claims.

### D. **Plaintiff Constitutional Rights Were Clearly Established Barring a Grant of Qualified Immunity**

It was clearly established on the date in question that an officer violates the Fourth Amendment if he effects a warrantless arrest knowing he lacks probable cause. *See Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001) ("If a person is arrested when no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues."). In the Fourth Amendment arena, the "requirement that an officer have probable cause to seize and arrest an individual has been clearly established constitutional law for decades." *McDaniel v. Maryland*, No. RDB–10–189, 2010 WL 3260007, at *8 (D. Md. Aug. 18, 2010).See, e.g., *United States v. Di Re*, 332 U.S. 581, 595, 68 S. Ct. 222, 92 L. Ed. 210 (1948) ("It is the officer's responsibility to know what he is arresting for, and why"); *Heien v. North Carolina*, 135 S. Ct. 530, 539–40, (U.S. 2014) ("an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce.")

The Fourth Amendment right to be free from unreasonable searches and seizures protects an individual's right to be free from excessive force during an arrest. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). It is clear from the Fourth Circuit's decision in *Jones* that it was well-established by September 2000 that when an individual does not pose an objective threat to an officer, the officer's right to use force is severely limited. *Id.* at 531–35. In addition, it has been clearly

15

established in the Fourth Circuit that an officer is not entitled to use "unnecessary, gratuitous, or disproportionate force" against a nonviolent misdemeanant who poses no threat to safety. *See Meyers v. Baltimore* Cty., Md., 713 F.3d 723, 734–35 (4th Cir. 2013).

It is also clearly established that when officers use using "unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen," they do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity. *Bailey v. Kennedy*, 349 F.3d 731, 744–45 (4th Cir.2003); *See also Champion v. Outlook Nashville Inc.*, 380 F.3d 893 ,903 (6th Cir. 2004),( "it is ... clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force."); *Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 345, 352–53 (1st Cir.1995), (the First Circuit, citing *Rowland*, reversed summary judgment on qualified immunity grounds to an officer who removed the plaintiff, charged with trespass, from a restaurant, handcuffed her, and dragged her to a police car, bruising her legs, when plaintiff offered testimony that she posed no threat to the officers or the public and did not resist arrest.); *Lester v. Chicago*, 830 F.2d 706, 714 (7th Cir. 1987) (holding that plaintiff stated trial worthy Fourth Amendment "excessive force" claim when, during course of arrest

for disturbing peace, plaintiff was kneed in the back, threatened with being struck, dragged down a hallway, and handcuffed tightly, causing bruises on her wrists).

Finally, "if a plaintiff has alleged a clearly established right, summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." *Buonocore v. Harris*, 65 F.3d 347, 359–60 (4th Cir. 1995); *see also Schultz v. Braga*, 455 F.3d 470 (4th Cir. 2006) (genuine issue of material fact as to whether passenger was making a dangerous, noncompliant movement just before agent shot him precluded summary judgment on agent's claim of qualified immunity); *Clem v. Corbeau*, 284 F.3d 543 (4th Cir. 2002) (officer not entitled to qualified immunity at the summary judgment stage where trial was necessary to resolve disputed facts as to whether Clem posed an immediate threat of serious bodily harm).

Taking Plaintiff's version of the events true, as necessary for the non-moving party at summary judgment, Plaintiff was merely walking down the street and into his home when he was ambushed by Defendant Officers. He had done absolutely nothing unlawful to give the officers a legal basis to seize him through excessive force. Thus, because several material factual disputes exist as discussed herein, this motion should be denied.

## CONCLUSION

For the above-mentioned reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' motion for summary judgment in its entirety.

Dated: October 5, 2020                    Respectfully Submitted,

                                                                   Excolo Law, PLLC

                                                                   */s/ Solomon M. Radner*
                                                                   Solomon M. Radner (20195)
                                                                   Attorney for Plaintiff
                                                                   26700 Lahser Rd., Suite 401
                                                                   Southfield, MI  48033
                                                                   (248) 291-9712
                                                                   sradner@excololaw.com

## **CERTIFICATE OF SERVICE**

Undersigned hereby states that on October 5, 2020 he caused the foregoing document to be filed electronically with the United States District Court and that a copy of said document was sent to all counsel of record through the Court's CM/ECF electronic filing system.

                        */s/ Solomon M. Radner*