**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| KATRINA DAVIS, )<br><br>Plaintiff, )<br><br>v. )<br><br>TYLER SENTZ, *et al.*, )<br><br>Defendants. ) | Civil Action No. 17-cv-03477-LKG<br><br>Dated:  March 3, 2023 |

**MEMORANDUM OPINION AND ORDER**

## I.     INTRODUCTION

In this civil rights action, Plaintiff, Katrina Davis, brings claims under 42 U.S.C. § 1983 based upon unlawful arrest, use of excessive force, and failure to intervene, against the Baltimore Police Department ("BPD") and three BPD police officers, Officers Ryan Perry, Tyler Sentz, and Jonathan Van Curan, in connection with the 2014 arrest of Darius Kimbrough.  Am. Compl., ECF No. 29.[1]  Defendants have moved for summary judgment in their favor on these claims. Mot. Summ. J., ECF No. 58 ("Mot."); Mem. in Support of Mot., 58-1 ("Mem.").  The motion is fully briefed.  Mot.; Opp. to Mot., ECF No. 59 ("Opp."); Reply in Support of Mot., ECF No. 62. No hearing is required to resolve the motion.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons set forth below, the Court **GRANTS-in-PART** and **DENIES-in-PART** Defendants' motion.

---

[1] The Court previously dismissed BPD from the action, because the amended complaint failed to state a claim against BPD upon which relief could be granted.  Order, ECF No. 44.  All subsequent references to "Defendants" refer only to the Defendant Officers.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.      Factual Background

Plaintiff, Katrina Davis, is the mother of Darius Kimbrough, who is deceased, and the personal representative of the Estate of Darius Kimbrough.  *See* Order, ECF No. 97.  During the time period relevant to this case, Mr. Kimbrough was a minor resident of Baltimore City, Maryland. Dep. of Darius Kimbrough at 12:19, ECF No. 59-1.

Defendants Tyler Sentz, Ryan Perry, and Jonathan Van Curan were employed as BPD officers during the time period relevant to this case.  Aff. of Ryan Perry ¶ 2, ECF No. 58-2; Aff. of Tyler Sentz ¶ 3, ECF No. 58-3; Aff. of Jonathan Van Curan ¶ 3, ECF No. 58-4.

The case arises from the 2014 arrest of then fourteen-year-old Darius Kimbrough.  *See* Am. Compl.  On the evening of August 6, 2014, Officers Perry, Sentz, and Van Curan conducted a routine patrol in West Baltimore.  *See* Aff. of Ryan Perry ¶ 3; Aff. of Tyler Sentz ¶ 4; Aff. of Jonathan Van Curan ¶¶ 4, 7.  Officers Perry and Sentz rode together, while Officer Van Curan patrolled separately. Aff. of Ryan Perry ¶¶ 3-4.

It is undisputed that, as Officers Perry and Sentz drove east along West Lexington Street in an unmarked vehicle, a black Dodge Charger raced toward them from behind, swerved into oncoming traffic, and sped past their patrol car.  *Id.* ¶¶ 4-5.  In response, the officers activated their emergency lights to conduct a stop.  *Id.* ¶ 5.  But the Dodge Charger sped on.  *Id.* ¶ 6.

After the officers pursued the Dodge Charger for several blocks, the Dodge Charger came to a stop on Penrose Avenue and the four occupants of the vehicle bailed from the vehicle.  *Id.* ¶¶ 5-7; Aff. of Tyler Sentz ¶ 9.  Three of the occupants fled the scene, while one occupant surrendered to the Officers.  Aff. of Ryan Perry ¶ 7; Aff. of Tyler Sentz ¶ 9.

Officer Sentz, now suspecting car theft, gathered general details about the three suspects as they ran off.  Aff. of Tyler Sentz ¶¶ 9-10.  It is undisputed that all three suspects were Black males, the driver of the Dodge Charger wore a white tank top and dark shorts, and the two other suspects wore dark pants, one with a blue shirt and the other with a red shirt.  Aff. of Tyler Sentz

---

[2] The facts recited herein are taken from the amended complaint, Defendants' motion for summary judgment, the memorandum in support thereof, the exhibits attached thereto, the reply in support of Defendants' motion for summary judgment and the exhibits attached thereto, and Plaintiff's opposition to the motion for summary judgment and the exhibits attached thereto.  ECF Nos. 29, 58 to 58-8, 59 to 59-6, 61 to 61-5, and 62 to 62-2.  Unless otherwise stated, the facts are undisputed.

¶ 9.  Officer Sentz pursued the three suspects on foot, while Officer Perry remained with the suspect who had surrendered.  Aff. of Tyler Sentz ¶ 11; Aff. of Ryan Perry ¶ 7.

After Officer Sentz lost sight of the fleeing suspects, he radioed for support.  Aff. of Tyler Sentz ¶ 11.  In his radio call, Officer Sentz described the driver of the Dodge Charger as "a thin build Black male wearing a white tank top and dark colored shorts."  *Id.*  In response to the call for support, additional units, including BPD helicopters, responded to take up the search.  *Id.*

Officer Van Curan was among the officers who responded to Officer Sentz's call for backup.  Aff. of Jonathan Van Curan ¶¶ 6-7.  Within a minute of hearing the call, Officer Van Curan observed Darius Kimbrough, who he believed matched the description of the driver of the Dodge Charger, on West Lexington Street.  *Id.* ¶ 7; Dep. of Officer Van Curan at 78:18-19, ECF No. 61-3.

The facts about the initial encounter between Officer Van Curan and Mr. Kimbrough are in some dispute.  Plaintiff maintains that Mr. Kimbrough was walking home after an evening of bike riding with a friend, Alex Courtney, when Officer Van Curan spotted him.  Dep. of Darius Kimbrough at 43:6-14, 46:14-17, 64:9-13.  It is undisputed that Mr. Kimbrough and Mr. Courtney were both dressed in white tank tops and dark shorts.  *Id.* at 51:1-16.  Plaintiff also maintains that Officer Van Curan did not issue any audible orders before he subsequently entered Mr. Kimbrough's home.  *See id.* at 68:8-10.

Officer Van Curan views this part of the encounter differently.  In his Affidavit, Officer Van Curan attests that Mr. Kimbrough was running down Lexington Street at the time of their encounter, that he ordered Mr. Kimbrough to stop, and that Mr. Kimbrough ignored his commands.  Aff. of Jonathan Van Curan ¶¶ 7-8.

The parties, nonetheless, agree that Officer Van Curan approached Mr. Kimbrough from behind when Mr. Kimbrough entered his home and started up the stairs inside.  Dep. of Darius Kimbrough at 69:22-70:11.  As Mr. Kimbrough ascended the staircase, he tripped and stumbled, wheeling to face the entryway to his home.  *Id.* at 70:13-72:14.  At that time, police officers entered through the door of his home and began streaming in behind Mr. Kimbrough.  *See id.* at 70:17-72:13.

Thereafter, Mr. Kimbrough started crawling up the stairs away from the officers.  *See id.* at 72:13-74:5; Dep. of Shalik Fulton at 51:16-19, ECF No. 61-4.  But, he did not get very far.

3

Officer Van Curan grabbed Mr. Kimbrough by the foot before he could get more than halfway up the staircase and dragged Mr. Kimbrough back down the stairs. Dep. of Darius Kimbrough at 72:13-74:5; *see* Aff. of Jonathan Van Curan ¶¶ 10-11. In an effort to gain leverage, Mr. Kimbrough grabbed hold of the staircase banister, gluing himself to the railing to resist Officer Van Curan's pull. Dep. of Darius Kimbrough at 75:10-21.

But, after less than a minute, Mr. Kimbrough released his hold on the staircase and submitted to Officer Van Curan's commands, allowing Officer Van Curan to drag him down the staircase and out the front door of his home. *Id.* at 76:11-13; Dep. of Shalik Fulton at 64:17-65:8; Aff. of Jonathan Van Curan ¶ 11. By the end of the altercation, at least five officers had entered the home. Dep. of Shalik Fulton at 42:7-9; *see* Aff. of Jonathan Van Curan ¶ 12.

Once outside of the home, Officer Van Curan "slam[med]" Mr. Kimbrough to the pavement and, together with another officer, pinned Mr. Kimbrough to the ground where he was ultimately handcuffed. Dep. of Barbara Harris at 57:13-18; Dep. of Darius Kimbrough at 76:11-13, 77:12-15. One officer at the scene took hold of Mr. Kimbrough's neck, forcing his face into the cement. Dep. of Darius Kimbrough at 86:3-87:15. A second officer at the scene pinned Mr. Kimbrough's lower half down by his legs and ankles. *Id.*

The officers pressed Mr. Kimbrough's face into the ground with enough force that Mr. Kimbrough began bleeding from the mouth. *See* Dep. of Barbara Harris at 57:17-58:3. Mr. Kimbrough testified that he was held in this manner for as long as thirty minutes before being taken into custody. *See* Dep. of Darius Kimbrough at 88:4-12. As a product of his forceful arrest, Mr. Kimbrough sustained a fractured wrist and other injuries. *See* Hospital Encounter Notes, ECF No. 58-8. All criminal charges against Mr. Kimbrough were subsequently dismissed. *See* Legal Action 3383937, ECF No. 62-2.

On November 22, 2017, Mr. Kimbrough filed this civil action, alleging unlawful arrest; excessive use of force; and failure to intervene related to the August 6, 2014, arrest. Compl., ECF No. 1. Mr. Kimbrough subsequently died on November 11, 2020. Decl. of Katrina Davis, ECF No. 84. His Mother, Katrina Davis, was subsequently substituted as the Plaintiff in this matter. Order, ECF No. 97.

**B.      Procedural History**

Plaintiff commenced this civil rights action on November 22, 2017. *See* Compl. Plaintiff

subsequently amended the complaint on November 29, 2017, and July 30, 2019, respectively. ECF Nos. 4 and 29.

On September 21, 2020, Defendants filed a motion for summary judgment and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 56. ECF Nos. 58 and 58-1. On October 5, 2020, Plaintiff filed a response in opposition to Defendants' motion. ECF No. 59. Defendants filed a reply brief on October 19, 2020. ECF No. 62.

Defendants' motion for summary judgment having been fully briefed, the Court resolves the pending motion.

### III.   LEGAL STANDARDS

#### A.   Fed. R. Civ. P. 56

A motion for summary judgment under Fed. R. Civ. P. 56 will be granted only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there are clearly factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).

In ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992). But, a party who carries the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party has the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit

or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

**B.     Section 1983**

Title 42, United States Code, Section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors.  *See* 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages).

**C.     Unlawful Arrest**

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures."  *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019) (quoting U.S. Const. amend. IV).  An arrest is unreasonable if it is made without probable cause.  *Id.* "'Probable cause' to justify an arrest" exists where "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)).  Assessing probable cause is a "totality-of-the-circumstances" inquiry focused "on two factors: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'"  *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983); and then quoting *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)).  Given this, the Court evaluates "the information available to the officer on the scene at the time" and applies "an objective test to determine whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest."  *Hupp*, 931 F.3d at 318 (citing *Gagnon*, 831 F.3d at 185).  And so, "[i]n a § 1983 personal or individual capacity suit," such as this one, "a plaintiff must show that the official charged personally caused the deprivation of his federal rights."  *Roberts v. Prince George's Cnty.*, 157 F. Supp. 2d 607, 609 (D. Md. 2001) (collecting cases).

### D.       Excessive Use Of Force And Failure To Intervene

The Fourth Amendment also "prohibits police officers from using force that is 'excessive' or not 'reasonable' in the course of making an" otherwise lawful arrest. *Meyers v. Balt. Cnty.*, 713 F.3d 723, 732 (4th Cir. 2013) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989). In this regard, the United States Supreme Court has held that excessive use of force claims are analyzed under an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The United States Court of Appeals for the Fourth Circuit has also held that, in "considering the reasonableness of an officer's actions, [the Court] must consider the facts at the moment that the challenged force was employed." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (citation omitted). And so, the Court must judge an officer defendant's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

The Supreme Court has also held that determining whether a defendant officer used an excessive level of force requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citation and internal quotation marks omitted). Specifically, this Court should consider three factors in assessing an excessive use of force claim: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted). The Supreme Court has cautioned, however, that the Court should not "apply this standard mechanically," because there could be other "types of objective circumstances potentially relevant to a determination of excessive force," *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Given this, the Court's analysis of an excessive use of force claim ultimately turns on whether "the totality of the circumstances" justified the level of force applied. *Smith*, 781 F.3d at 101 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Under the "bystander liability" doctrine, a law enforcement officer who does not personally commit a constitutional deprivation may nonetheless be liable for failure to intervene if the officer fails to fulfill "a duty to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002). Given this, a "bystander officer" may be held liable if the officer: "1) knows

that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204.

### E. Qualified Immunity

Lastly, the Supreme Court has explained that the "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). And so, "[t]he doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012) (citation omitted).

In this regard, the Fourth Circuit has held that courts should apply a two-step test when determining whether a defendant is entitled to qualified immunity. *See Wilson v. Prince George's Cnty.*, 893 F.3d 213, 219 (4th Cir. 2018); *see Pearson*, 555 U.S. at 232. First, the Court inquires whether "the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the [defendant's] conduct violated the plaintiff's constitutional right." *Wilson*, 893 F.3d at 219 (citation omitted). Second, the Court must determine whether "the right at issue was 'clearly established' at the time of [the defendant's] conduct." *Id.* (citation omitted). In "cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," however, district courts have discretion to resolve the matter at the second step without reaching a conclusion on the first. *Pearson*, 555 U.S. at 237.

## IV.   ANALYSIS

Defendants have moved for summary judgment in their favor on all claims in this action. First, Defendants argue that they are entitled to summary judgment in their favor with regards to Plaintiff's unlawful arrest claim in Count I of the amended complaint, because there is no evidence that Officers Perry and Sentz participated in Mr. Kimbrough's arrest and the undisputed material facts in this case show that the arrest was supported by probable cause. Mem. at 12-18. Second, Defendants argue that they are entitled to summary judgment in their favor with regards to Plaintiff's excessive force claim in Count II of the amended complaint, because there is no evidence showing that Officers Perry and Sentz used any force on Mr. Kimbrough and the

8

undisputed material facts show that Officer Van Curan used reasonable force in arresting Mr. Kimbrough. *Id*. at 19-22. Third, Defendants argue that they are entitled to summary judgment in their favor with regards to Plaintiff's failure to intervene claim in Count III of the amended complaint, because Plaintiff has not produced any evidence to support the elements of this claim. *Id*. at 22-23. Lastly, Officers Sentz and Van Curan argue they are entitled to qualified immunity on Count I. *Id*. at 16-18.

Plaintiff counters that Defendants are not entitled to summary judgment, because a reasonable jury could find that: (1) Defendants unlawfully arrested Mr. Kimbrough; (2) Defendants applied excessive force; and (3) Defendants failed to intervene to aide Mr. Kimbrough. Opp. at 5-14. Lastly, Plaintiff argues that Defendants are not entitled to qualified immunity because Mr. Kimbrough's constitutional rights were clearly established at the time of the August 6, 2014, arrest. *Id*. at 14-17. And so, Plaintiff requests that the Court deny Defendants' motion for summary judgment. *Id*. at 18.

For the reasons discussed below, the undisputed material facts show that Plaintiff cannot prevail on the unlawful arrest claim, because Officers Perry and Sentz were not on the scene during Mr. Kimbrough's arrest and Officer Van Curan is entitled to qualified immunity on this claim. The undisputed material facts also show that Plaintiff cannot prevail on the excessive use of force claim against Officers Perry and Sentz, because these officers were not involved with Mr. Kimbrough's arrest, or in the use of force on Mr. Kimbrough. But, the evidentiary record does not preclude this claim with regards to Officer Van Curan, because there is a genuine issue in dispute regarding whether Officer Van Curan's use of force was reasonable and proportional to the demands of the confrontation.

Because there is a genuine issue in dispute regarding whether Officer Van Curan used excessive force, or witnessed the use of force on Mr. Kimbrough, summary judgment is also not appropriate on Plaintiff's failure to intervene claim as to Officer Van Curran. While there is no evidence showing that Officer Perry witnessed Mr. Kimbrough's arrest, there are material facts in dispute regarding whether Officer Sentz witnessed any force used against Mr. Kimbrough that

preclude summary judgment as to Officer Sentz.  And so, the Court GRANTS-in-PART and DENIES-in-PART Defendants' motion for summary judgment.

###### A.   Defendants Are Entitled To Summary Judgment On Plaintiff's Unlawful Arrest Claim

###### 1.   Officers Perry And Sentz Were Not Involved In Mr. Kimbrough's Arrest

As an initial matter, Defendants persuasively argue that Officers Perry and Sentz are entitled to summary judgment in their favor with regards to Plaintiff's unlawful arrest claim, because the undisputed material facts show that they were not involved in Mr. Kimbrough's arrest.  The Fourth Circuit has held that an arrest is unreasonable if it is made without probable cause.  *Hupp*, 931 F.3d at 318.  "'Probable cause' to justify an arrest" exists where "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Gray*, 137 F.3d at 769 (quoting *DeFillippo*, 443 U.S. at 37).  Given this, the Court assesses whether the Defendant Officers had probable cause to arrest Mr. Kimbrough here, based upon a "totality-of-the-circumstances" inquiry focused "on two factors: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'"  *Munday*, 848 F.3d at 253 (quoting *Gates*, 462 U.S. at 230; and then quoting *Gagnon*, 831 F.3d at 184).

In Count I of the amended complaint, Plaintiff alleges that Officers Perry, Sentz, and Van Curan "wantonly, intentionally, knowingly, maliciously, recklessly, objectively, unreasonably, and/or with gross negligence and/or deliberate indifference detained, handcuffed, and arrested Mr. Kimbrough without a warrant or any lawful basis."  Am. Compl. ¶ 50.  But, as Defendants correctly observe in their motion for summary judgment, Plaintiff has failed to identify any evidence showing that Officers Perry and Sentz were involved in the arrest of Mr. Kimbrough.

In this regard, Officers Perry and Sentz have submitted sworn Affidavits to the Court stating that they were not present when Mr. Kimbrough was arrested.  *See* Aff. of Ryan Perry ¶¶ 8-9; Aff. of Tyler Sentz ¶¶ 12-13.  Plaintiff does not dispute that Officer Sentz was not present during Mr. Kimbrough's arrest.  *See* Opp. at 6-10.  But Plaintiff seeks to rebut Officer Perry's Affidavit with the deposition testimony of Shalik Fulton.

10

A review of Mr. Fulton's deposition testimony shows, however, that he testified only that there were "so many police officers" on the scene at the time of Mr. Kimbrough's arrest that he had "no idea" who arrested Mr. Kimbrough, and that he saw Officer Perry only much later when Officer Perry approached him in the back of the police car.  Dep. of Shalik Fulton at 42:7-12, 44:5-21.  Mr. Fulton's testimony is consistent with Officer Perry's own attestation that he was not on the scene when Mr. Kimbrough was arrested.  Given this, the undisputed material facts show that neither Officer Perry nor Officer Sentz were involved in the arrest of Mr. Kimbrough. And so, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's unlawful arrest claim as to Officers Perry and Sentz.

> **2.      Officer Van Curan Is Entitled To Qualified**
> **Immunity On Plaintiff's Unlawful Arrest Claim**

Entry of summary judgment in favor of Officer Van Curran on Plaintiff's unlawful arrest claim is also warranted, because Defendants have shown that Officer Van Curan is entitled to qualified immunity.  There is no dispute in this case that Officer Van Curan arrested Mr. Kimbrough on August 6, 2014.  Aff. of Jonathan Van Curan ¶¶ 9-11.  The parties do, however, disagree about whether Officer Van Curan had probable cause to arrest Mr. Kimbrough.  *See* Mem. at 18; Opp. at 9-10.

The Court does not need to resolve this factual dispute to decide Defendants' motion for summary judgment.  As discussed below, the undisputed material facts show that Officer Van Curan would be immune from suit under the doctrine of qualified immunity, even if he lacked probable cause to arrest Mr. Kimbrough.

The Supreme Court has explained that the "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson*, 555 U.S. at 231 (quoting *Harlow*, 457 U.S. at 818).  And so, "[t]he doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'"  *Merchant*, 677 F.3d at 661 (citation omitted).

In this regard, the Fourth Circuit has held that courts should apply a two-step test when determining whether a defendant is entitled to qualified immunity.  *See Wilson*, 893 F.3d at 219;

11

*see Pearson*, 555 U.S. at 232.  First, the Court inquires whether "the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the [defendant's] conduct violated the plaintiff's constitutional right."  *Wilson*, 893 F.3d at 219 (citation omitted).  Second, the Court must determine whether "the right at issue was 'clearly established' at the time of [the defendant's] conduct."  *Id.* (citation omitted).  Where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," however, district courts may resolve the case at the second step without reaching a conclusion on the first. *Pearson*, 555 U.S. at 237.

Taken in the light most favorable to Plaintiff, the undisputed material facts in this case show that: (1) Mr. Kimbrough physically matched Officer Sentz's description of "a thin build Black male wearing a white tank top and dark colored shorts;" (2) at the time Office Van Curran encountered Mr. Kimbrough, Mr. Kimbrough was just blocks from the scene of the Dodge Charger bailout on "the 1500 block of West Lexington Street;" and (3) Mr. Kimbrough's path crossed with Officer Van Curan's within minutes of the radio transmission about the fleeing suspects.  Aff. of Jonathan Van Curan ¶¶ 6-7; Dep. of Officer Van Curan at 77:21-79:1; Aff. of Tyler Sentz ¶¶ 9, 11; Dep. of Darius Kimbrough at 51:1-13, 52:17-20, 55:3-14.  Plaintiff relies solely upon the Fourth Circuit's decision in *Smith v. Munday*, 848 F.3d 248 (4th Cir. 2017), to argue that, based upon these facts, Officer Van Curan's conduct violated a clearly established right under the Fourth Amendment.  *See* Opp. at 7-10.

In *Munday*, the Fourth Circuit held that an arrest based on a generic physical description of a suspect was unreasonable.  *Munday*, 848 F.3d 253-55.  But *Munday* was decided in 2017— three years *after* Officer Van Curan arrested Mr. Kimbrough.  Given this, Plaintiff has not shown that this case proves that a clearly established right existed in 2014.

More significantly, the facts of *Munday* are distinguishable from this case for several reason.  While *Munday* also involved an arrest based on a generic physical description of a suspect, the description of the suspect and the criminal allegation in that case were supplied by a confidential informant, rather than a police officer as is the case here.  *Id.* at 253.  The arrest in *Munday* was also made eleven miles from the scene of the crime and nine months after the incident allegedly took place.  *Id.* at 253-54.  By comparison, the arrest at issue here was made just minutes after Officer Sentz's radio call and occurred just two blocks from the suspect's

12

reported location.  *See* Aff. of Jonathan Van Curan ¶ 7; Dep. of Officer Van Curan at 77:21-79:1; Aff. of Tyler Sentz ¶ 9.  And so, this dispute involves an arrest that took place in a much closer geographic and temporal proximity to the suspected crime than the arrest in *Munday.*  This case also involves the increased reliability that attaches to a suspect description provided by a law enforcement officer.

In the absence of providing any other authority to show that Officer Van Curan violated a clearly established right during the arrest of Mr. Kimbrough, the Court agrees with Defendants that Officer Van Curan is entitled to qualified immunity with regards to Plaintiff's unlawful arrest claim.  And so, the Court will also GRANT Defendants' motion for summary judgment on Plaintiff's unlawful arrest claim as to Officer Van Curan.

> **B.      Defendants Perry And Sentz Are Entitled To Summary Judgment On Plaintiff's Excessive Use Of Force Claim, But Officer Van Curan is Not**
>
> > **1.      The Undisputed Material Facts Show That Officers Perry And Sentz Were Not Involved With The Use Of Force**

The undisputed material facts in this case also show that Officers Perry and Sentz are entitled to summary judgement in their favor on Plaintiff's excessive use of force claim, because they were not involved with Mr. Kimbrough's arrest, or the use of force on Mr. Kimbrough to effectuate that arrest.  The Court's analysis of Plaintiff's excessive use of force claim turns on whether "the totality of the circumstances" justified the level of force applied.  *Smith*, 781 F.3d at 101 (citing *Garner*, 471 U.S. at 8-9).  Given this, the Court must judge the Officer Defendant's use of force during the arrest of Mr. Kimbrough "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.  And so, in assessing Plaintiff's excessive use of force claim here, the Court considers: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  *Id.* (citation omitted).

In Count II of the amended complaint, Plaintiff alleges that Defendants violated Mr. Kimbrough's civil rights by using "excessive force against [him] without any probable cause to believe that [he] was armed or involved in any crime or posed an objectively reasonable threat of

death or serious bodily harm to the officers." Am. Compl. ¶ 65.  But, as discussed above, Officers Perry and Sentz have submitted unrebutted evidence to the Court showing that they were not involved in Mr. Kimbrough's arrest, or in the use of force on Mr. Kimbrough.  *See* Aff. of Ryan Perry ¶¶ 8-9; Aff. of Tyler Sentz ¶¶ 12-13.

Plaintiff again improperly relies upon the deposition testimony of Mr. Fulton to cast doubt upon this evidence, because Mr. Fulton's testimony does not establish that Officer Perry or Sentz were at the scene during Mr. Kimbrough's arrest or during the use of force on Mr. Kimbrough.  *See* Dep. of Shalik Fulton at 42:7-12, 44:5-21.  Given this, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's excessive use of force claim as to Officers Perry and Sentz.

### 2.    The Undisputed Material Facts Do Not Show That Officer Van Curan's Use Of Force Was Reasonable

The undisputed material facts make clear, however, that summary judgment is not appropriate on Plaintiff's excessive use of force claim against Officer Van Curan.  Rather, the undisputed material facts cast doubt upon Defendants' argument that Officer Van Curan's use of force during the arrest of Mr. Kimbrough was reasonable and proportional to the demands of the confrontation.

In this regard, Plaintiff has introduced evidence that, on the night of the August 6, 2014, arrest, Officer Van Curan followed Mr. Kimbrough into his house, conducted a physical arrest of Mr. Kimbrough, marched Mr. Kimbrough into the front yard, threw him to the ground, and subjected Mr. Kimbrough to a prone restraint for a period of up to half an hour.  *See* Dep. of Darius Kimbrough at 70:6-76:13, 85:22-88:12; Dep. of Shalik Fulton at 14:20-15:1, 42:7-9, 51:16-19, 58:10-14, 64:17-65:8; Dep. of Barbara Harris at 57:17-58:3; Aff. of Jonathan Van Curan ¶¶ 5, 9-11.  As Mr. Kimbrough explained in his deposition testimony, upon entering his home, Mr. Kimbrough began climbing the stairs to the second floor when he tripped, fell, and turned to see a string of officers bursting in the door behind him.  *See* Dep. of Darius Kimbrough at 70:6-72:13.  Now frightened, Kimbrough attempted to crawl away up the stairs, but Officer Van Curan grabbed him by the foot and dragged him down the staircase.  *Id.* at 72:13-74:5; Dep. of Shalik Fulton at 51:16-19; Aff. of Jonathan Van Curan ¶¶ 10-11.  At this point, Mr. Kimbrough latched onto the banister to prevent Officer Van Curan from gaining control of him.

14

Dep. of Darius Kimbrough at 75:10-21.  But, Mr. Kimbrough let go of the railing within a minute, permitting Officer Van Curan to pull him down the stairs and out into the front of the house.  *Id.* at 77:12-15; Dep. of Shalik Fulton at 64:17-65:8.

Plaintiff also identifies evidence showing that, once outside, Officer Van Curan "slam[med]" Mr. Kimbrough to the ground.  *See* Dep. of Barbara Harris at 57:17-58:3; Dep. of Shalik Fulton at 58:10-14; Dep. of Darius Kimbrough at 76:11-13, 77:12-15.  Plaintiff also points to evidence showing that Officer Van Curan and another officer then pinned Kimbrough down.  *See* Dep. of Darius Kimbrough at 85:22-86:1; Dep. of Shalik Fulton at 58:10-14; Aff. of Jonathan Van Curan ¶¶ 10-11.  In this regard, one officer positioned himself above Mr. Kimbrough's neck, forcing his face into the cement; meanwhile, the other officer took Mr. Kimbrough's bottom-half, pinning down his legs and ankles.  Dep. of Darius Kimbrough at 86:3-87:15.  The officers also handcuffed Mr. Kimbrough and restrained him in this position for as long as 30 minutes, while he bled from the mouth.  *Id.* at 88:4-12; Dep. of Barbara Harris at 57:17-58:3.[3]

Applying the *Graham* factors to this evidence, the Court agrees with Plaintiff that there is a genuine issue in dispute about whether Officer Van Curan applied excessive force during Mr. Kimbrough's arrest for several reasons.  First, the facts make clear that Mr. Kimbrough was suspected of operating a stolen vehicle.  Aff. of Jonathan Van Curan ¶ 5.  While this is a serious crime, it is not a violent crime.

Second, the undisputed material facts show that Mr. Kimbrough did not pose a threat to the public, or to the officers on the scene.  At the time of his arrest, Mr. Kimbrough was in the safety of his own home.  *Id.* ¶¶ 9-11.  The evidence before the Court also shows that Mr. Kimbrough: (1) was not suspected of being armed; (2) attempted to ascend the staircase to get

---

[3] Officer Van Curan does not deny this account, *see* Aff. of Jonathan Van Curan ¶¶ 9-13, but instead argues that Plaintiff has failed to introduce evidence that Officer Van Curan tossed Mr. Kimbrough to the ground and pinned him there, Mem. at 20-22.  The deposition testimony is indeed riddled with considerable confusion as to the roles of specific officers at various points throughout the encounter.  But Officer Van Curan admits to dragging Kimbrough down the stairs and taking him outside, and Fulton stated in his deposition that the "[s]ame two officers" who apprehended Kimbrough on the stairs dragged him in front of the house.  *See* Dep. of Shalik Fulton at 58:10-14; Aff. of Jonathan Van Curan ¶¶ 10-11.  And so, whether Officer Van Curan was in fact the officer who slammed Kimbrough to the ground and pinned him down is a dispute of fact that must be reserved for the jury.

away from the advancing officers, rather than advancing toward the officers; (3) was significantly outnumbered by the number of officers who responded to the scene; and (4) had a slender build that could not have been physically intimidating to the officers on the scene. *See* Dep. of Shalik Fulton at 14:20-15:1, 42:7-9; Dep. of Darius Kimbrough at 72:13-74:5.

Lastly, the undisputed material facts show that, while Mr. Kimbrough did briefly resist arrest, he promptly submitted to Officer Van Curan within a minute of that struggle, and Mr. Kimbrough was compliant by the time the officers slammed him to the ground and throughout the time period that he remained handcuffed and pinned down in his front yard. Dep. of Shalik Fulton at 64:17-65:8; Dep. of Darius Kimbrough at 86:2-88:12.

As this Court has recognized, Officer Van Curan had an obligation to arrest Mr. Kimbrough with minimal force, even if he had probable cause to make the arrest. *Moore v. Peitzmeier*, No. 18-cv-2151, 2020 WL 94467, at *7 (D. Md. Jan. 7, 2020) (citing *Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 901 (4th Cir. 2016)) (Even where officers are "entitled to use some amount of force [] the amount of such force [is] constrained by the magnitude of the threat or resistance that [the plaintiff] presented.").[4] Because the undisputed material facts show that: (1) Mr. Kimbrough was no longer resisting arrest when Officer Van Curan slammed him to the ground and imposed a prone restraint; (2) that Mr. Kimbrough was surrounded by squadrons of police officers; and (3) that he posed no threat to the public or to these officers, the evidence in this case casts doubt upon Defendants' argument that Officer Van Curan's use of force was reasonable and proportional to the demands of the confrontation. *Cf. Jones v. Buchanan*, 325 F.3d 520, 532 (4th Cir. 2003); *Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993).[5] And so, the Court DENIES Defendants' motion for summary judgment on Plaintiff's excessive use of force claim as to Officer Van Curan.

---

[4] Unpublished opinions are cited only for the persuasiveness of their reasoning, not for precedential value.

[5] Officer Van Curan does not raise the defense of qualified immunity with respect to Count II of the amended complaint. *See* Mem. at 19-22.

**C.**     **Defendant Perry Has Shown That He Is**
**Entitled To Summary Judgment On Plaintiff's Failure To**
**Intervene Claim, But Officers Sentz and Van Curan Have Not**

**1.**     **The Undisputed Material Facts Show That**
**Officer Perry Did Not Fail To Intervene**

As a final matter, the undisputed material facts show that Officer Perry is entitled to summary judgment on Plaintiff's failure to intervene claim.  Under the "bystander liability" doctrine, a law enforcement officer who does not personally commit a constitutional deprivation may nonetheless be liable for failure to intervene if the officer fails to fulfill "a duty to act." *Randall*, 302 F.3d at 203.  And so, a defendant officer may be held liable if they: (1) know that a fellow officer is violating an individual's constitutional rights; (2) have a reasonable opportunity to prevent the harm; and (3) choose not to act.  *Id.* at 204.

In Count III of the amended complaint, Plaintiff alleges that Defendants "observed or had reason to know that excessive force and unlawful arrests would be or were being used, had a reasonable opportunity and the means to prevent this harm, but failed to do so.  Am. Compl. ¶ 78.[6]  But, as discussed above, Officer Perry testified that he was not present when Mr. Kimbrough "was taken into custody or arrested[,] did not see any force used against him," and in fact was never even present at Kimbrough's residence on the night of the incident.  Aff. of Ryan Perry ¶¶ 8-9; Dep. of Ryan Perry at 52:14-19, ECF No. 61-1.

As Officer Perry explains in his deposition testimony, he remained at the scene of the Dodge Charger bailout to handle the one suspect detained at that scene and to oversee the towing of the abandoned vehicle.  Dep. of Ryan Perry at 52:14-53:4.  While Plaintiff disputes Officer Perry's account, Plaintiff's reliance upon the deposition testimony of Shalik Fulton to place Officer Perry at the scene is misplaced.  *See* Fulton Dep. at 71:8-76:14 (stating that Officer Perry was at the house only after Mr. Fulton and Mr. Kimbrough had been released from the officers' restraints and thus after the alleged excessive force had ceased).

---

[6] A plaintiff is entitled to pursue "competing and alternative theor[ies] at trial," and so Plaintiff may survive summary judgment on these claims even where they overlap or conflict with his claims of excessive force.  *See Kancor Americas, Inc. v. ATC Ingredients, Inc.*, No. 15-cv-589, 2016 WL 740061, at *8 (E.D. Va. Feb. 25, 2016).

Given this, Plaintiff puts forward no evidence to support an inference that Officer Perry witnessed the alleged use of force on Mr. Kimbrough, or that he had an opportunity to prevent this conduct.  And so, the Court will GRANT Defendants' motion for summary judgment on Plaintiff's failure to intervene claim as to Officer Perry.

### 2. There Are Material Facts In Dispute Regarding Whether Officers Van Curan And Sentz Failed To Intervene

Defendants' motion for summary judgment is on much less firm ground with regards to Officers Van Curan and Sentz.  There are material facts in dispute regarding whether Officer Van Curan used excessive force and whether both of these officers had a duty to intervene.

As Plaintiff persuasively argues, a reasonable jury could find that Officers Van Curan and Perry failed to intervene to aide Mr. Kimbrough on the night of his arrest based upon the evidence in this case.  Opp. at 13-14.  There is a genuine issue in dispute in this case regarding whether Officer Van Curan used excessive force on Mr. Kimbrough.  If Plaintiff is unable to prove at trial that it was Officer Van Curan—as opposed to another officer—who mishandled Mr. Kimbrough in the front yard of his home, a reasonable jury could still conclude that Officer Van Curan, who was unquestionably on the scene, had an opportunity to intervene in this alleged open violation of Mr. Kimbrough's constitutional rights and that he failed to do so.  For this reason, the Court must DENY Defendants' motion for summary judgment on Plaintiff's failure to intervene claim as to Officer Van Curan.

Summary judgment is similarly inappropriate on Plaintiff's failure to intervene claim against Officer Sentz.  There are material facts in dispute about whether Officer Sentz witnessed the use of force on Mr. Kimbrough.  Officer Sentz states in his affidavit that he "did not see any force used against" Mr. Kimbrough.  Aff. of Tyler Sentz ¶ 12.  But Officer Sentz also acknowledges that he responded to Mr. Kimbrough's home and that, once there, he identified Mr. Kimbrough.  *See id.* ¶ 13.  Mr. Kimbrough also testified during his deposition that Officer Sentz was "one of the first cops on the scene." Kimbrough Dep. 107:11.

Given this, a reasonable jury could infer that Officer Sentz also observed the use of force on Mr. Kimbrough, and that he could have, but did not in fact, intervene.  And so, the Court must

also DENY Defendants' motion for summary judgment on Plaintiff's failure to intervene claim as to Officer Sentz.[7]

## V.   CONCLUSION

For the reasons discussed above, the Court:

1.      **GRANTS-in-PART and DENIES-in-PART** Defendants' motion for summary judgment (ECF No. 58); and

2.      **ENTERS JUDGMENT:**

(a) in favor of Defendants Perry, Sentz, and Van Curan as to Count I of the amended complaint;

(b) in favor of Defendants Perry and Sentz as to Count II of the amended complaint; and

(c) in favor of Defendant Perry as to Count III of the amended complaint.

It is further **ORDERED** that the parties shall file a joint status report **on or before April 3, 2023**, stating their respective views on how this matter should proceed in light of this Memorandum Opinion and Order.

Judgment shall be entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

/s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[7] Officers Sentz and Van Curan do not raise the defense of qualified immunity with respect to Count III. Mem. at 22-23.